CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 25 2007

JOHN F. CORCORAN, CLERK
BY: /s/
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| FERN DUMIRE,<br>for M.R.<br>Plaintiff, | Civil Action No. 7:06cv00444 |
| v. | By: Hon. Michael F. Urbanski<br>United States Magistrate Judge |
| JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | |

## REPORT AND RECOMMENDATION

Plaintiff Fern Dumire ("Dumire"), grandmother and guardian of the minor child, M.R., brought this action pursuant to 42 U.S.C. § 1383(c)(3), incorporating 42 U.S.C. § 405(g), for review of the Commissioner of Social Security's final decision denying her claim for child's supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"). The case was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(b)(1)(B) for report and recommendation, and is before the court on cross motions for summary judgment. Having reviewed the record, and after briefing and oral argument, the case is ripe for decision. The undersigned reports that the Commissioner's decision was supported by substantial evidence and was legally correct. Accordingly, the undersigned recommends that defendant's motion for summary judgment be granted and plaintiff's motion for summary judgment be denied.

## I.

Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but it is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Comissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

Infants are "disabled" for purposes of SSI eligibility when they suffer medically determinable impairments, physical or mental, that result in marked and severe functional limitations, and last or can be expected to last for a continuous period of at least twelve (12) months, or result in death. 42 U.S.C. § 1382c(a)(3)(C)(i). In determining whether an infant is eligible for SSI on the basis of disability, the court employs a three-step evaluation. 20 C.F.R. § 416.924.

First, it must be determined whether the infant engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). Second, if the infant did not engage in substantial gainful activity, it must be determined whether the infant suffers a severe impairment or combination of impairments. 20 C.F.R. § 416.924(c). Third, if the infant suffers a severe impairment or combination of impairments, it must then be determined whether the infant's impairment meets, medically

equals, or functionally equals an impairment listed in the Listing of Impairments at 20 C.F.R. pt. 404, subpt. P, app. 1. 20 C.F.R. § 416.924(d).

Functional equivalence means the impairments at issue amount to those of listing-level severity. 20 C.F.R. § 416.926a(a). To be functionally equivalent to a listed impairment, the impairments in question must result in "marked" limitations in at least two domains of functioning or an "extreme" limitation in one domain. Id. The court assesses six domains of functioning in determining functional equivalence: (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) ability to care for oneself; and (6) health and physical well being. 20 C.F.R. § 416.926a(b)(1).

## II.

Dumire claims disability status for her grandchild, M.R., due to his learning disability.[1] (Pl.'s Mem. in Supp. of Summ. J. 1-2.) Specifically, Dumire alleges that M.R. experiences difficulties in encoding, decoding, and completing tasks. (Id. at 8.) Dumire disputes the administrative law judge's ("ALJ") finding that M.R. was not disabled because he does not suffer "marked" limitations in two domains of functioning. (Id.) Dumire argues that the medical record establishes that M.R. has marked limitations in Domain 1, concerning acquiring and using information, and Domain 2, concerning attending to and completing tasks, resulting in the functional equivalent of a listed impairment and, therefore, is disabled under the Act. (Id.)

---

[1] Dumire alleges M.R.'s disability began on June 1, 2003; however, Dumire filed M.R.'s disability application on January 8, 2004. (R. 16) Because the controlling law only permits any disability payments to commence from the date on which the application was filed, the evidence complied prior to January 8, 2004 may be considered only to determine M.R.'s condition on or after that date, or in determining an onset date of disability. 20 CFR § 416.501.

3

The ALJ determined that M.R. did not engage in substantial gainful activity and that he suffered from a severe impairment; however, he concluded that M.R.'s combined impairments did not meet or medically equal a listed impairment. (Administrative Record [hereinafter R.] at 19) The ALJ then considered whether M.R.'s impairments were functionally equivalent to a listed impairment, employing the six domains of functioning. (R. 18) Based on the record, the ALJ found that M.R suffered serious problems in Domain 1, acquiring and using information, which resulted in a "marked" limitation. (R. 18) Although the ALJ found evidence that M.R. suffered some limitation in Domain 2, attending to and completing tasks, and mild limitation in Domain 3, interacting and relating with others, he concluded these were not "marked." (R. 18) The ALJ found no evidence in the record that reflected M.R. suffered limitations in any other domain of functioning. (R. 18) Therefore, the ALJ concluded M.R. was not "disabled" under the Act. (R. 19)

Dumire argues that the ALJ erred in finding M.R. did not suffer a "marked" limitation in Domains 2 due to his severe reading disability. It is undisputed that M.R. has a "marked" limitation in Domain 1. However, there is no evidence to suggest that M.R. had a "marked" limitation in Domains 3 through 6. Because "marked" limitations in two domains of functioning are required for functional equivalence to a listed impairment, the focus of this appeal concerns whether M.R. had a "marked" limitation in Domain 2.

### III.

Substantial evidence in the record supports the ALJ's determination that M.R.'s impairments did not functionally equal a listed impairment under the Act. Every medical source who reviewed the record concluded that M.R. did not suffer "marked" limitation in any domain

apart from Domain 1. M.R.'s counselor indicated that he had "less than marked" limitations in these domains, and documented improvement in M.R.'s general functioning. M.R.'s teachers reported that M.R. experienced some difficulty in Domain 2, but that difficulty was minor and his school records indicate that he did not suffer "marked" limitation in Domain 2. Although Dumire reported and testified that M.R. had some limitation in Domain 2, considering the record as a whole, the evidence is supports the ALJ's conclusion that M.R. did not suffer marked limitation in two domains of functioning.

First, every medical source who reviewed this case opined that M.R. had less than "marked" limitation as regards attending to and completing tasks, Domain 2. Two state agency psychologists, Drs. Tenison and Milan, reviewed M.R.'s file on April 26, 2004 and June 10, 2004 respectively, and concluded that M.R. suffered "less than marked" limitation in Domain 1 and nearly no limitation in Domain 2. (R. 252-253) On December 6, 2005, Dr. Spencer, an independent expert physician obtained by the ALJ, testified that M.R. suffered "marked" limitation in Domain 1, but experienced "between no limitation and less than marked" limitation in Domain 2. (R. 330) Dr. Spencer further concluded that M.R. did not experience any limitations in Domains 3 through 6. (R. 330) After Dumire submitted additional evidence on behalf of M.R., Dr. Spencer evaluated it and, in a letter to the ALJ dated February 6, 2006, concluded that even considering the new evidence, M.R. still suffered a "marked" impairment only in Domain 1. (R. 315)

Second, M.R.'s treating counselor's notes support the ALJ's conclusion that M.R. suffered "marked" limitation in Domain 1 only. Brenda Boyce-Goulart began treating M.R. on July 14, 2003, after his mother had been convicted of felony neglect and incarcerated. (R. 238)

5

Initially, Boyce-Goulart noted that M.R. had difficulty reading and problems with bed wetting. (R. 233) During the course of her treatment, Boyce-Goulart administered M.R. a series of global assessment functioning tests (GAF). (R. 249) At the beginning of his treatment with Boyce-Goulart, M.R. returned a GAF rating of 61. (R. 239) Throughout the course of his treatment, M.R.'s GAF rating continued to rise, reaching 67 in March, 2004, (R. 236), 76 in August, 2004, and 85 at the time of discharge in November, 2004 (R. 262-265) GAF ratings between fifty-one and sixty represent "moderate" limitations. Diagnostic & Statistical Manual for Mental Disorders (DSM) at 32. A "marked" limitation is more than "moderate." 20 C.F.R. pt. 404, subpt. P, app.1, § 12.00 (c) (2006). Thus, according to the GAF scale, M.R., even at his lowest level of achievement, did not suffer even moderate limitations. Furthermore, Boyce-Goulart noted that M.R. had no limitation in Domain 2 regarding completing tasks. (R. 250) Although she is neither a medical expert nor an "acceptable medical source," Boyce-Goulart was M.R.'s treating therapist and, as such, her opinions provide insight into the severity of the impairment and how it affects the individual's ability to function. Social Security Ruling ("SSR") 06-03p.

Third, M.R.'s teachers' reports also indicate M.R. did not suffer consistent "marked" limitation in Domain 2. On March 22, 2004, M.R.'s Second Grade teacher indicated that M.R. had problems functioning in Domain 2. (R. 112) However, that teacher characterized M.R.'s problems as regards attending to and completing tasks as "slight," with the only exception being his organization of personalty and school materials, which she described as "a very serious problem." (R. 112) In sum, in Second Grade, M.R. had "no problem[s]" in four categories of Domain 2, "slight problem[s]" in eight categories, and a "very serious problem" in one category. (R. 112) In Third Grade, M.R.'s teacher indicated that M.R. experienced difficulties in decoding

6

and encoding, but also volunteered answers and was a positive role model. (R. 191) As regards Domain 2, M.R.'s Fourth Grade teacher indicated that M.R. had some problems attending to and completing tasks. (R. 172) However, in the itemized checklist, she noted that M.R. had "no problem[s]" in twelve categories of Domain 2, and only a "slight problem" in one category. (R. 172) Finally, M.R.'s Fifth Grade teacher indicated that M.R. had "no problem[s]" in four categories of Domain 2, "slight problem[s]" in eight categories, and "an obvious problem" in one category. (R. 208) However, that same teacher then noted that "in a small setting, the above listed items are not major problems." (R. 208)

Fourth, M.R.'s school reports and test scores do not indicate he suffered a "marked" limitation in two domains of function. Upon referral to Special Education Services, prior to Dumire's filing for SSI on behalf of M.R., M.R. underwent psychological testing. (R. 123) Those tests returned "high end of average" results, and M.R.'s teacher noted that those scores accurately reflected his classroom performance. (R. 126) M.R. was also administered the WISC-III, which indicated that he was well within the average range of cognitive and intellectual functioning among his peers. (R. 143) By November 2005, M.R. had earned B's in Language Arts, Spelling, and Social Studies and C's in Reading, Math, and Science, (R. 180), and by December, 2005, M.R. had earned all A's and B's, except for one C in Science. (R. 322) Throughout his education, M.R.'s teachers documented his significant problems with reading. (See R.) When he was first examined, M.R. had a reading recovery level of three to five when he should have read between levels fifteen and twenty. (R. 129) In Third Grade, M.R. had a Grade Equivalent of 1.4 in Reading. (R. 177) Despite his significant difficulties in Reading, M.R.

appears to have done reasonably well in school with the help of his Special Education Program, and he continues to improve.

Finally, Dumire's reports and testimony do not suggest M.R. suffers "marked" impairment in two domains of functioning. The ALJ found Dumire's testimony credible, but not consistent with a finding of "marked" impairment in Domain 2. (R. 19) Dumire testified that M.R. repeatedly forgets his homework, tells her he has no homework, and proceeds to get in trouble for failing to complete his homework. (R. 322) In order to deal with this problem, M.R.'s teachers created a logbook in which M.R. was to keep track of his assignments, under Dumire's guidance, but he repeatedly forgot to bring it home. (R. 323) However, Dumire reported that M.R. completes tasks when supervised, and he completes his homework and chores most of the time. (R. 89) She later reported to M.R.'s counselor that he was "sometimes" distracted and failed to complete tasks, but "seldom" had difficulty concentrating or a short attention span. (R. 300)

There is no dispute that M.R. suffered "marked" impairment in Domain 1. All medical sources, M.R.'s treating counselor, M.R.'s teachers, and M.R.'s scores, as a whole, provide substantial evidence sufficient that a reasonable mind could consider adequate to support the conclusion that M.R. did not suffer "marked" limitation in Domain 2 regarding attending to and completing tasks. Despite the fact that M.R.'s teachers documented some evidence of impairment in Domain 2, considering the record as a whole, the ALJ had ample evidence to outweigh any slight discrepancies among M.R.'s teachers. Furthermore, M.R.'s teachers documented only minor impairments in Domain 2 and they noted a trend of improvement throughout M.R.'s education to date. Accordingly, the ALJ's decision not to grant M.R. SSI

8

Case 7:06-cv-00444-GEC-mfu   Document 17   Filed 05/25/07   Page 8 of 10   Pageid#: 63

benefits because his impairments did not functionally equal a listed impairment was supported by substantial evidence.[2]

## IV.

For the foregoing reasons, the undersigned recommends that plaintiff's motion for summary judgment be denied and defendant's motion for summary judgment be granted.

In making this recommendation, the undersigned does not suggest that M.R. does not experience significant limitations that affect his ability to function in school. The objective record simply fails to document the existence of "marked" limitations in two domains of functioning, or "extreme" impairment in one domain. It appears the ALJ properly considered all of the objective and subjective evidence in adjudicating Dumire's claim for SSI on behalf of her grandson. It follows that all facets of the Commissioner's decision are supported by substantial evidence in this case. It is therefore recommended that Defendant's motion for summary judgment be granted.

The Clerk is directed immediately to transmit the record in this case to the Hon. Glen E. Conrad, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to the Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual

---

[2] Although Dumire argues that M.R.'s impairment in Domain 1 is so significant that it causes M.R. substantial difficulty in Domain 2, she did not allege that his impairments in Domain 1 are "extreme." Nor did any treating sources suggest that M.R. had an "extreme" limitation in Domain 1.

9

recitation or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court hereby is directed to send a certified copy of this Report and Recommendation to all counsel of record.

Enter this 25th day of May, 2007.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge

10